# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF ARIZONA

In re:

**ATHENA MEDICAL GROUP, LLC,**

Debtor.

Chapter 11

Case No. 2:23-bk-01635-BKM

**UNDER ADVISEMENT DECISION REGARDING DORSEY & WHITNEY LLP'S FEE APPLICATION**

## I.     INTRODUCTION

Before the Court is the Application of Dorsey & Whitney LLP, as Attorneys for the Debtor, for Compensation and Reimbursement of Expenses for the Period June 28, 2023 through January 27, 2025 for Actual and Necessary Work Performed for the Benefit of the Estate After June 27, 2023 (the "Application").[1] Wound Care Specialists, LLC and RENU LLC (collectively, "WCS") filed an objection to the Application. The Application and the objection raise the somewhat novel question of whether counsel for a dispossessed subchapter V debtor may recover from the estate its fees and costs incurred in pursuing a plan of reorganization, or for performing other work. As

---

[1] Dkt. No. 851.

noted in the Final Report of the ABI Subchapter V Task Force p. 49, "[t]he current legal landscape provides no clear path to allowing debtor's counsel to continue to be compensated following dispossession." The Debtor, however, claims three paths for payment: 1) because only the Debtor can file a plan under § 1189,[2] it must be able to retain and pay counsel; 2) as prior counsel for the debtor in possession, the firm is still a professional retained under § 327; and 3) its fees can be awarded as the actual and necessary costs of preserving the estate under § 503(b)(1)(A). The Court finds that these paths are non-navigable as a means of payment post-dispossession. Accordingly, it denies the Application.

## II. BRIEF FACTS

The facts of this subchapter V case are also somewhat novel. The Debtor is a medical group that provides wound care services to patients in Arizona, Washington, Texas, and Florida. Before and after the filing of its chapter 11 petition, the Debtor has grossed in excess of $25,000,000 annually. The Debtor has no secured creditors, and only a modest amount of unsecured debt, with one exception: WCS's asserted claim in excess of $12,000,000.

Debtor filed for bankruptcy under subchapter V of the Bankruptcy Code on March 15, 2023,[3] in response to WCS's state court complaint and motion for preliminary injunction.[4] The case was contentious from the start, with WCS obtaining an order to examine the Debtor under Rule 2004 on March 20, 2023,[5] as well as an order providing for expedited discovery.[6] Following a flurry of filings by WCS, including discovery requests and an objection to the Debtor's

---

[2] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532 and "Rule" references are to the Federal Rules of Bankruptcy Procedure.
[3] Dkt. No. 2.
[4] The Debtor vehemently disputes WCS's claim. The Debtor's claim objection, as well as its counterclaims against WCS are the subject of an ongoing adversary proceeding, case no. 2:23-ap-00057-BKM ("Adversary").
[5] Dkt. No. 21.
[6] Dkt. No. 28.

subchapter V election,[7] on April 25, 2023, the Debtor moved to substitute in Dorsey & Whitney LLP ("Dorsey") as its counsel of record.[8] Such motion was approved by the Court on May 8, 2023.[9]

Based largely on information learned through discovery, on May 25, 2023, WCS filed its Motion for Appointment of Chapter 11 Trustee or, in the Alternative, for the Removal of the Debtor-in-Possession and Expansion of the Subchapter V Trustee's Powers.[10] On June 28, 2023 ("Disposition Date"), the Court entered its order removing the Debtor as debtor-in-possession and expanding the Subchapter V Trustee's powers under § 1181(b)(5).[11]

Dorsey continued representing the Debtor after the Disposition Date and filed its first plan on July 13, 2023.[12] While the Subchapter V Trustee supported the Debtor's first plan, confirmation was, nonetheless, a grueling process. It was not until January 27, 2025, following a series of objections by WCS, three plans, a multitude of other pleadings, several hearings, and two multi day trials, that the Court entered an order confirming the Debtor's Third Amended Plan (the "Plan").[13, 14] WCS did not appeal the order confirming the Plan. On February 12, 2025, the Plan went effective.

Thereafter, on March 14, 2025, Dorsey filed the instant Application, requesting $1,251,277 in fees and $25,865.40 in expenses, for work performed from June 28, 2023, through January 27,

---

[7] Dkt. No. 31.
[8] Dkt. No. 63.
[9] Dkt. No. 97.
[10] Dkt. No. 111. The motion focused primarily on "missteps" made by the Debtor, among them, continuing to pay prepetition vendors after the filing. WCS requested alternative relief in its motion because at the time, its objection to the subchapter V election was still pending. That objection was denied on June 15, 2023. Dkt. No. 156.
[11] Dkt. No. 174.
[12] Dkt. No. 211.
[13] Dkt. No. 651.
[14] Dkt. No. 811.

Case 2:23-bk-01635-BKM    Doc 928    Filed 07/29/25    Entered 07/29/25 09:10:01    Desc
Main Document    Page 3 of 22

2025, *i.e.*, the period after the Disposition Date up through the day before the Plan was confirmed. WCS objected to the Application on April 4, 2025, arguing that the attorney for a dispossessed debtor is not entitled to an award of attorney fees from the estate as a matter of law under the Bankruptcy Code, that the Application was untimely, and that many time entries were not compensable ("Objection").[15] Dorsey filed its reply on April 18, 2025 ("Reply").[16] While the parties disagree on many things, the fundamental facts necessary to decide the matter are undisputed.

## III.    LEGAL FRAMEWORK

As noted, the case before the Court was filed under subchapter V of chapter 11. Subchapter V is relatively new having become effective on February 19, 2020, as a result of the Small Business Reorganization Act of 2019 ("SBRA"). *Small Business Reorganization Act of 2019,* 3 Bankruptcy Desk Guide § 26:69. "The purpose of Subchapter V is to provide a better path for small businesses to successfully restructure, reduce liquidations, save jobs and increase recoveries to creditors." *Id.* To meet this goal, the SBRA did not repeal existing chapter 11 provisions but instead added several alternative procedures under subchapter V of chapter 11. *Id.*

Unless and until it is removed by a court, a debtor filing a chapter 11 remains in possession of its assets and in charge of its operations as a "debtor in possession." Pursuant to § 1107(a),[17] a

---

[15] Dkt. No. 866. The Court notes that WCS's objection to the Application is not a surprise to the parties or the Court, as WCS indicated early on the record that it would object to any fee application by Dorsey on the same or similar grounds as it does here. *See* June 28, 2023, Minute Entry. Dkt. No. 181.

[16] Dkt. No 877.

[17] Section 1107(a) reads:

> Subject to any limitations on a trustee serving in a case under this chapter, and to such limitations or conditions as the court prescribes, a debtor in possession shall have all the rights, other than the right to compensation under section 330 of this title, and powers, and shall perform all the functions and duties, except the duties specified in sections 1106(a)(2), (3), and (4) of this title, of a trustee serving in a case under this chapter.

4

1  debtor in possession in a traditional chapter 11 holds many of the powers of a trustee, including

2  the right to retain professionals under § 327(a).[18] Similarly, pursuant to § 1184,[19] in a subchapter

3  V case, the debtor in possession has many of the rights of a trustee, including the right to retain

4  professionals under § 327(a). Approval of employment does not guarantee payment. Pursuant to §

5  330,[20] before a debtor's attorney can be paid from the estate, there must be notice and an

6  opportunity to be heard, and the court must approve the amounts to be paid.

7      In a traditional chapter 11 under § 1121(b),[21] the debtor has the exclusive right to pursue a

8  plan for the first 120 days of the case. Pursuant to § 1106(a)(5),[22] when a traditional chapter 11

9  debtor is removed as the debtor in possession, the chapter 11 trustee who succeeds it is charged

10

11

---

12  [18] Section 327(a) reads:
        Except as otherwise provided in this section, the trustee, with the court's approval, may employ one
13      or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not
        hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or
        assist the trustee in carrying out the trustee's duties under this title.
14  [19] Section 1184 reads:
        Subject to any limitations on a trustee serving in a case under this chapter, and to such limitations
15      or conditions as the court prescribes, a debtor in possession shall have all the rights, other than the
        right to compensation under section 330 of this title, and powers, and shall perform all the functions
        and duties, except the duties specified in sections 1106(a)(2), (3), and (4) of this title, of a trustee
16      serving in a case under this chapter.
    [20] Section 330(a)(1), in particular, reads:
17      After notice to the parties in interest and the United States Trustee and a hearing, and subject to
        sections 326, 328, and 329, the court may award to a trustee, a consumer privacy ombudsman
18      appointed under section 332, an examiner, an ombudsman appointed under section 333, or a
        professional person employed under section 327 or 1103--
19          (A) reasonable compensation for actual, necessary services rendered by the trustee,
            examiner, ombudsman, professional person, or attorney and by any paraprofessional
            person employed by any such person; and
20          (B) reimbursement for actual, necessary expenses.
    [21] Section 1121(b) reads:
21      Except as otherwise provided in this section, only the debtor may file a plan until after 120 days
        after the date of the order for relief under this chapter.
22  [22] Section 1106(a)(5) reads:
        A trustee shall-- as soon as practicable, file a plan under section 1121 of this title, file a report of
        why the trustee will not file a plan, or recommend conversion of the case to a case under chapter 7,
23      12, or 13 of this title or dismissal of the case.

5

with the responsibility of filing a plan, and under § 1121(c)[23] the door is also opened for any other party in interest to file a plan.

Among its many features that distinguish it from a traditional chapter 11, under the SBRA, §§ 1106, 1107 and 1121 do not apply in a subchapter V case,[24] and "[o]nly a debtor may file a plan...." § 1189(a). Absent from the SBRA is any corollary provision that allows an interested party, including a subchapter V trustee, in a subchapter V to file a plan, even in the event the debtor is dispossessed. The parties' dispute emanates from the lack of clarity as to how counsel for a dispossessed debtor in a subchapter V is to be compensated for assisting a debtor in pursuing a plan.

## IV.  LEGAL ANALYSIS

WCS objects to the Application arguing that nothing in the Bankruptcy Code entitles Dorsey to have its fees paid by the estate. Its argument sets forth the same analysis courts have used in traditional chapter 11 cases, noting that a "prerequisite for an award of compensation for a professional under § 330 is … employment under § 327 (or § 1103),"[25] and concluding that, because a debtor's authority to retain counsel under § 327(a) is premised on it asserting the rights

---

[23] Section 1121(c) reads:
> Any party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may file a plan if and only if—
> (1) a trustee has been appointed under this chapter;
> (2) the debtor has not filed a plan before 120 days after the date of the order for relief under this chapter; or
> (3) the debtor has not filed a plan that has been accepted, before 180 days after the date of the order for relief under this chapter, by each class of claims or interests that is impaired under the plan.

[24] Section 1181(a) reads in pertinent part:
> Sections 105(a), 1101(1), 1104, 1105, 1106, 1107, 1108, 115, 1116, 1121, 1123(a)(8), 1123(c), 1127, 1129(a)(15), 1129(b), 1129(c), 1129(e), and 1141(d)(5) of this title do not apply in a case under this subchapter.

[25] Objection, 8:5-6, citing § 330(a); *Lamie v. U.S. Trustee*, 540 U.S. 526, 534 (2004); and *In re Tevis*, 347 B.R. 679, 694 (B.A.P. 9th Cir. 2006).

Case 2:23-bk-01635-BKM    Doc 928    Filed 07/29/25    Entered 07/29/25 09:10:01    Desc
Main Document    Page 6 of 22

of a trustee as debtor in possession, once the debtor is removed as debtor in possession it can no longer retain counsel under § 327 and counsel is, accordingly, no longer appointed thereunder.[26] In support of this argument, WCS relies primarily on four cases.

The first case cited is *Lamie*. The issue before the Supreme Court in *Lamie* was whether a chapter 11 debtor's counsel could recover fees from the estate for work performed after the case converted to chapter 7. *Id.* at 538-39. The focus of the Supreme Court's analysis in *Lamie* was on a change made to the text of § 330(a) in the Bankruptcy Reform Act of 1994, 108 Stat. 4106, which provided that only entities employed under § 327 could be paid under § 330(a). Employing the plain meaning of the text, the Supreme Court noted that "§ 327 professional persons undoubtedly includes attorneys, as much as does § 330(a)(1)'s reference to professional persons." *Id.* at 536. Accordingly, it concluded that debtor's counsel appointed under § 327 in a chapter 11 was not entitled to fees under § 330(a)(1) for work performed after the case converted to chapter 7 because upon conversion, counsel ceased to be "employed as authorized by § 327. If the attorney is to be paid from estate funds under § 330(a)(1) in a Chapter 7 case, he must be employed by the trustee and approved by the court." *Id.* at 538-539.

The second case cited is *In re Tevis*, 347 B.R. at 694, which is cited for the proposition that a debtor in possession may retain professionals under § 327 and that employment is prerequisite to compensation.[27]

The third case cited is *In re Sunergy California LLC*, 646 B.R. 840 (Bankr. E.D. Cal. 2022), *aff'd*, No. BAP EC-22-1230-GCB, 2023 WL 4184860 (B.A.P. 9th Cir. June 26, 2023). In *Sunergy,* the debtor in possession was removed and replaced by a chapter 11 trustee. Following confirmation

---

[26] Objection, 8:5-17.
[27] Objection, 8:9-10; 14-15.

of the trustee's liquidating plan, debtor's counsel filed its application for fees which included time for work performed in appealing the court's order appointing the chapter 11 trustee. *Id.* at 845 (noting its previous decision *In re Johnson,* 397 B.R. 486 (Bankr. E.D. Cal. 2008)). In *Johnson,* the court had taken up a similar issue and concluded that *Lamie's* "underlying rationale turned on cessation of status as debtor in possession indicat[ing] that there is no reason to doubt that *Lamie* applies equally to chapter 11 cases in which a trustee is appointed." *Id.* at 490. Not surprisingly, the court followed the same reasoning in *Sunergy*, concluding that "under *Lamie* the key event is termination of DIP status. The distinction between appointment of a chapter 11 trustee or conversion to chapter 7 makes no difference. The putative services after appointment of the chapter 11 trustee were rendered without the benefit of an employment authorization under § 327." 646 B.R. at 845. The new trustee under *Lamie*, had "three alternatives," according to the court in *Sunergy*: "(1) re-employ former DIP counsel under § 327(a); (2) employ former DIP counsel for a specified special purpose under § 327(e); or (3) not employ former DIP counsel. Here, the trustee chose option three." *Id.* Accordingly, the *Sunergy* court denied the debtor's counsel's fee application to the extent incurred after the removal of the debtor in possession. *Id*.

The fourth case, and only subchapter V case cited by WCS, is in *In re NIR West Coast, Inc.*, 638 B.R. 441 (Bankr. E.D. Cal. 2022). In *NIR West Coast*, debtor's counsel applied for its fees after the court had removed the debtor in possession and expanded the subchapter V trustee's powers. The Court denied the fees in their entirety, concluding that debtor's counsel held an adverse interest to the estate and that counsel had failed to disclose its connections that gave rise to the adverse interest. *Id*. at 447-452. It went on, however, to independently deny a portion of the fees that were incurred after the debtor was removed as debtor in possession, as well as a portion of the fees incurred prior to being appointed as counsel. As to the former amounts, relying on

*Johnson* and its interpretation of *Lamie*, the court noted that § 1184 is "substantively similar to § 1107(a)," and as § 1107:

> …provides the debtor as the debtor in possession-and thence as the functional equivalent of a trustee-with authority to employ attorneys under § 327 and to compensate attorneys from the estate under § 330…[s]o too must the former. And so just as the removal of the debtor as the debtor in possession in a non-subchapter v chapter 11 case terminates the debtor's authority and status under § 1107(a), removal of the debtor as the debtor in possession in a subchapter v chapter 11 case equally terminates the debtor's authority and status under § 1184. In other words, *Lamie* is no less applicable in a subchapter v chapter 11 case.

*NIR West Coast*, 638 B.R. at 452-453. Accordingly, the court concluded that:

> Termination of the Debtor's status as the debtor in possession … terminated the Debtor's retention of the Law Firm under § 327(a) as the estate's attorneys and the ability to compensate and reimburse the Law Firm from the estate under § 330. Compensation and reimbursement of expenses for services that the Law Firm provided on and after April 1, 2021, are therefore denied for the independent reasons stated above.

*Id.* at 453.

Dorsey argues that *Lamie* is distinguishable because it involved conversion from a traditional chapter 11 to chapter 7, not the removal of a debtor in possession in a subchapter V case. It argues that *Tevis* and *Sunergy* are distinguishable because neither involved subchapter V, the former dealing with a chapter 7 trustee in a converted chapter 13 case and the latter, because it "converted to Chapter 7."[28] Dorsey also argues that *NIR West Coast* is not binding on the Court and is distinguishable because the court in *NIR West Coast* was focused primarily on the debtor's attorney's failure to disclose an adverse interest to the estate and did not address any of the arguments it raises as to the payment of its fees.

---

[28] Reply, p. 15, n. 13. The comment regarding *Sunergy* may have been in error; the Court sees nothing in the opinion to indicate the confirmed liquidating case converted to chapter 7.

Dorsey raises three possible theories on which the Court can award its fees: 1) because only the Debtor can file a plan under § 1189, it must be able to retain and pay counsel; 2) as prior counsel for the debtor in possession, the firm is still a professional retained under § 327; and 3) its fees can be awarded as the actual and necessary costs of preserving the estate under § 503(b)(1)(A).[29] The Court will address WCS's arguments first and then turn to Dorsey's.

Key to a professional being compensated from the estate under § 330 is that person's employment under § 327(a)(1): "A debtor's attorney not engaged as provided by § 327 is simply not included within the class of persons eligible for compensation." *Lamie*, 540 U.S. at 534. Focusing on the effect of conversion from chapter 11 to 7, the Supreme Court noted that the conversion to chapter 7 "terminated [the debtor's] status as debtor-in-possession and so terminated petitioner's service under § 327 as an attorney for the debtor-in-possession." *Id.* at 532. "Adhering to conventional doctrines of statutory interpretation," the Supreme Court concluded "that § 330(a)(1) does not authorize compensation awards to debtors' attorneys from estate funds, unless they are employed as authorized by § 327. If the attorney is to be paid from estate funds under § 330(a)(1) in a Chapter 7 case, he must be employed by the trustee and approved by the court." *Id.* at 538-39.

Although the *Lamie* court was most certainly relying on § 348(e) in its determination that the debtor was terminated as debtor in possession upon conversion, the focus of the Supreme Court's analysis was on the effect of such termination. That is, the Supreme Court concluded that once terminated as debtor-in-possession, the debtor's attorney's services were also terminated. In

---

[29] These theories derive from those set forth in *In re ComedyMX, LLC*, No. 1:22-bk-11181, Dkt. No. 153 (Bankr. D. Del. April 25, 2023) and by the Hon. Paul W. Bonapfel, *Subchapter V Update* (March 2024), https://www.flmb.uscourts.gov/judges/tampa/mcewen/SubchapterV.pdf ("*Bonapfel Update*"), at p. 28, n. 22.

the chapter 11 context, once a debtor is dispossessed, it no longer functions as the trustee and therefore has no ability to hire counsel under Section 327. It stands to reason, then, that upon removal of the debtor in possession, counsel is likewise removed or terminated as counsel for the debtor in possession. This Court agrees with the court's analysis in *Johnson* (as adopted in *Sunergy*):

> Although *Lamie* involved the different situation of a case that was converted from chapter 11 to chapter 7, the fact that its underlying rationale turned on cessation of status as debtor in possession indicates that there is no reason to doubt that *Lamie* applies equally to chapter 11 cases in which a trustee is appointed.

*Johnson*, 397 B.R. at 490.

While Dorsey distinguishes *Sunergy* as not involving subchapter V, the *Sunergy* court's analysis appears sound in the context of a traditional chapter 11 and the Court is unaware of any courts holding to the contrary.[30] The court in *NIR West Coast* expanded this analysis to the subchapter V context, finding no reason to differentiate. But as Dorsey notes, *NIR West Coast* did not analyze the arguments that Dorsey puts forth, and at least one court in the unreported *ComedyMX* decision did just that and allowed the fees.

Before exploring Dorsey's arguments, the context in which the *ComedyMX* decision was issued merits discussion. In *ComedyMX,* the court had before it a request for fees for work performed by debtor's counsel after the removal of the debtor as debtor in possession. The court referenced three theories for recovery, describing each as "potential" bases for relief, "subject to

---

[30] The ruling appears in line with other rulings on the topic, e.g., *In re Bresnick*, 406 B.R. 582 (Bankr. E.D.N.Y. 2009), *aff'd sub nom. Morrison v. U.S. Trustees*, No. 09-CV-3565 (CBA), 2010 WL 2653394 (E.D.N.Y. June 24, 2010) and *In re Int'l Gospel Party Boosting Jesus Groups, Inc.*, 487 B.R. 12 (D. Mass. 2013). Notably, the Supreme Court in *Lamie*, 540 U.S. at 531, cited with apparent approval *Matter of Pro-Snax Distributors, Inc.*, 157 F.3d 414. 425 (5th Cir. 1998), *overruled on other grounds by In re Woerner*, 783 F.3d 266 (5th Cir. 2015), which held that Section 330(a) "excludes attorneys from its catalog of professional officers of a bankruptcy estate who may be compensated for their work after the appointment of a Chapter 11 trustee."

counterarguments that are at least colorable" and specifically noting that its order "does not adjudicate or resolve any such issue." *Id.* at p. 2-3. The *ComedyMX* court was not required to resolve any such argument as it was in the unique situation where "no party object[ed] to awarding [debtor's counsel's] compensation from the estate for actual, necessary worked [sic] performed for the benefit of the state [sic] after the Dispossession Date. The Court accordingly grant[ed] this relief on that basis." *Id.* While the decision can hardly be considered a ringing endorsement of any particular theory of recovery, it does set forth three different paths of analysis which Dorsey adopts in its briefing.

### 1. The "Necessity" Argument

The theory behind Dorsey's first argument, as mentioned in *ComedyMX* and explained in the *Bonapfel Update*, is that "after dispossession, the debtor retains the limited obligation of a trustee to file a plan so that the dispossessed debtor can retain counsel under § 327(a) (entitled to compensation under § 330(a)) for services necessary to perform that function." *Bonapfel Update* at p. 29, n. 22. Despite the Code's silence on the theory, Dorsey contends that this theory is logical because it would be *illogical* for Congress to enact the SBRA – with the intent of making chapter 11 more efficient and affordable to small businesses and giving a debtor the exclusive ability to file a plan – while also making it impossible for a dispossessed debtor to pursue a plan because it cannot pay counsel. It also argues that any interpretation that does not allow for compensation of counsel would disincentivize debtors from filing under subchapter V.[31]

The Court does not find this argument persuasive. The weaknesses of this argument are also well stated in the *Bonapfel Update*:

The difficulty with this position is that the duty of a trustee to file a plan under §

---

[31] Application, 20:18-21.

1106(a)(5) is not applicable in a subchapter V case. See § 1181(a). The argument thus depends on the proposition that the duty to file a plan is a trustee duty that § 1189 vests in the debtor and that the debtor retains this trustee duty even after dispossession.

*Id.* at p. 29, n. 22.

As noted in the *Bonapfel Update*, a trustee's duty to file a plan emanates from § 1106(a)(5) which is not applicable in a subchapter V case. Accordingly, a subchapter V debtor's right to file a plan does not emanate from the trustee, but directly from § 1189(a). Therefore, it is illogical to argue that a debtor continues to retain the rights of the trustee to file a plan, when the debtor's right never emanated from the trustee's rights in the first place.

If the dispossessed debtor is to have the right to retain counsel who will be paid from the estate, the right must arise from some other provision in the Bankruptcy Code. Sections 1189 and 330 are, however, silent on the issue, even though Congress has demonstrated it knows how to allow compensation for attorneys who represent debtors with the exclusive ability to file plans. In chapters 12 and 13 only the debtor can file a plan[32] and § 330(a)(4)(B) specifically allows for the compensation of a debtor's attorney in each instance.[33] No other Code section provides that a dispossessed debtor is entitled to pay its counsel from estate funds.

This Court also disagrees with Dorsey's argument that it is illogical and inequitable that Congress would grant the debtor the exclusive right to pursue a plan and then make it "impossible" for a dispossessed debtor's attorney to be entitled to compensation.[34] It is well established that

---

[32] *See* §§ 1221 and 1308.

[33] As explained in *Lamie*, "while § 330(a)(1) requires proper authorization for payment to attorneys from estate funds in Chapter 7 filings, it does not extend throughout all bankruptcy law. Compensation for debtors' attorneys in Chapter 12 and 13 bankruptcies, for example, is not much disturbed by § 330 as a whole. See, *e.g.,* 11 U.S.C. § 330(a)(4)(B)…." 540 U.S. at 537.

[34] Dorsey argues that the inequity is exacerbated by the fact that entities (as opposed to individuals) can only appear

"when the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms." *Lamie*, 540 U.S. at 534. While prohibiting counsel's fees to be paid from the estate may result in a roadblock to a debtor's reorganization efforts, the Court does not find the result absurd. The Court observes that subchapter V debtors gain several advantages under the SBRA, *e.g.*, the absence of the absolute priority rule, the ability to commit to only a three-year plan, no longer having to file and obtain approval of a disclosure statement, the exclusive ability to file a plan, and more. Along with these benefits, it is equally logical that Congress intended accompanying burdens, *i.e.*, if a debtor wants to confirm a plan after being dispossessed, it must find alternative sources to fund its attorneys.[35]

The Court also disagrees that denying counsel's fees will have a chilling effect for those wanting to file subchapter V. Given all the benefits of subchapter V, the primary impact of not allowing compensation from the estate would most likely be that future debtors will be more careful not to do things that could lead to their removal. For these reasons, the Court is not persuaded by this argument.

### 2. Retention as a Professional Person Argument

For its second argument, Dorsey argues that "post-removal fees are appropriate under 11 U.S.C. § 330 because, as prior counsel to the debtor-in-possession, the Dorsey attorneys working on this case are professional persons employed under 11 U.S.C. § 327."[36] Put another way, Dorsey

---

through counsel. *See Rowland v. California Men's Colony, Unit II Men's Advisory Council*, 506 U.S. 194, 201-202, (1993); and *McGowan v. Boek*, 402 F. App'x 287 (9th Cir. 2010).

[35] Indeed, in this instance, WCS stated at oral argument that it did not object to Dorsey being paid from any income that exceeds the Debtor's projected disposable income under its Plan, no doubt recognizing that actual income exceeding the projected disposable income inures to the equity holders. In the context of paying its counsel from estate funds, a debtor could also seek reinstatement under § 1185(b), or with respect to non-plan work, debtor's counsel might be approved as special counsel under § 327(e). *See Johnson*, 397 B.R. at 492. Indeed, this happened in this case, as the Court appointed Dorsey as special counsel to assist with the Subchapter V Trustee with the Adversary.

[36] Application, 22:3-5.

continued to be employed as "professional persons" even after the Debtor was removed as debtor in possession. Other than citing to *ComedyMX*, and to the *Bonapfel Update*, Dorsey does little in the Application and Reply to explain the mechanics of this theory.[37]

WCS contends that *NIR West Coast* "makes clear that debtor's counsel does not qualify as a 'professional person' under § 327(a) with the ability to obtain compensation from the debtor's estate following the removal of the debtor as the debtor-in-possession."[38] According to WCS, a "professional person" under § 327(a) is no different than, and has no greater rights than, an attorney employed under § 327(a). Moreover, as WCS points out, Dorsey was appointed as counsel for the debtor in possession, not as a professional person.[39]

While it does not appear that the court in *NIR West Coast* specifically addressed this issue, this Court nonetheless agrees with WCS. The key to employment under § 327(a) is employment by the trustee, whether that person is an attorney or another professional person. Once a debtor is dispossessed, it no longer functions as the trustee; thus, anyone it hires should no longer be

---

[37] From *ComedyMX*:

> Alternatively, it could be argued that an award is appropriate under § 330 on the ground that, as prior counsel to the debtor, the firm is a professional person employed under § 327.

*Id.* at p. 2-3. *ComedyMX* immediately follows the prior quote with a footnote:

> *But see Lamie v. United States Trustee*, 540 U.S. 526 (2004) (holding that counsel for chapter 11 debtor could not be compensated under § 330 following conversion of case to chapter 7, but not considering or addressing the contention that such counsel remained "a professional person employed under section 327," perhaps in light of the directive of § 348(e), which is inapplicable here).

*Id.* at p. 3, n. 3. Judge Bonapfel's explanation is similar:

> A second theory could be that fees are appropriate under § 330 because, as prior counsel to the debtor, the professional is a professional person employed under § 327. *Lamie* is potentially distinguishable because the case involved services after conversion to chapter 7. The Court did not address the contention that the attorney was a professional employed under § 327, perhaps in light of the directive in § 348(e) that conversion terminates the service of the trustee (the debtor-in-possession) in the chapter 11 case.

*Bonapfel Update*, p. 28-29, n. 22.
[38] Objection, 10:16-11:2.
[39] Dkt. No. 97.

Case 2:23-bk-01635-BKM    Doc 928    Filed 07/29/25    Entered 07/29/25 09:10:01    Desc
Main Document      Page 15 of 22

employed under § 327 unless the trustee independently determines to seek approval to hire them.

In addition, redesignating the debtor's counsel as a professional person upon the removal of the debtor in possession would lead to complications with respect to the breadth of counsel's duties, which under such analysis would presumably not be limited solely to filing a plan. Indeed, in its Application, Dorsey is seeking fees not just for formulating and pursuing a plan, but for other general work on the case. While the Court notes that Dorsey and the Subchapter V Trustee both contend that the general work was performed at the Subchapter V Trustee's request, that might not always be the case and could lead to duplication of expenses as well as potential inconsistency in administering the estate. For these reasons, the Court does not find this argument persuasive.

### 3. Actual Necessary Costs and Expenses Argument

Finally, Dorsey argues that its legal fees incurred after Debtor's removal as debtor in possession qualify as actual, necessary costs and expenses of preserving Debtors' estate under § 503(b)(1)(A). According to Dorsey, fees are actual and necessary costs of preserving the estate because, if "the Debtor was prohibited from employing Dorsey for post-removal services, the Debtor would never have confirmed a plan and would have ended up liquidating."[40] Dorsey also argues that the Debtor's retention of exclusivity to file a plan differentiates this from a traditional chapter 11 in which the trustee can file a plan. Dorsey also notes that the list of examples under § 503(b) of those who can be entitled to an award is not exclusive or exhaustive. Thus, nothing in § 503(b) excludes its compensation.

WCS cites multiple cases for the proposition that Dorsey cannot use § 503(b)(1)(A) to make an end run around of §§ 327, 330, and 503(b)(2). *See, In re Milwaukee Engraving Co., Inc.,*

---

[40] Application, 21:12-13.

219 F.3d 635, 636 (7th Cir. 2000); *F/S Airlease II, Inc. v. Simon*, 844 F.2d 99, 108-09 (3d Cir. 1988); *In re Keren Ltd. P'ship*, 189 F.3d 86, 88 (2d Cir. 1999); *In re Peterson*, 163 B.R. 665, 675, n. 11 (Bankr. D. Conn. 1994); and *In re Weibel, Inc.*, 176 B.R. 209, 213 (B.A.P. 9th Cir. 1994). Dorsey differentiates these cases by noting their age and observing that none of them interpret the issue in the context of a subchapter V case.

Of all the arguments made by Dorsey, this theory has the most surface appeal, as the work performed by Dorsey in proposing and prosecuting the plan unquestionably resulted in a successful confirmation. Indeed, WCS implicitly acknowledges some benefit to the estate by challenging the necessity of only $836,915.38 of the $1,251,277, leaving $414,361.62 in requested fees unchallenged.

As tempting as it would be to grant fees on this basis,[41] the Bankruptcy Code and case law do not support Dorsey's argument. To start, the Court must acknowledge the "axiom that a statute's general permission to take actions of a certain type must yield to a specific prohibition found elsewhere." *Law v. Siegel*, 571 U.S. 415, 421 (2014). Here, §§ 327, 330, and 503(b)(2) govern the award of compensation to a debtor's attorney, while an allowance of an administrative expense under § 503(b)(1) applies more generically. The cases cited by WCS support this analysis.

In *Milwaukee Engraving* a law firm filed chapter 11 on behalf of the debtor and applied to be counsel of record. 219 F.3d at 636. The U.S. Trustee objected and twenty days after the filing the bankruptcy court concluded that the application could not be approved, as the firm represented an adverse interest to the estate. *Id*. The firm then filed its application for fees for the period it provided services. While the bankruptcy court was cognizant of Seventh Circuit case law that

---

[41] Or on the bases of §§ 503(b)(3)(D) and (4) which were raised for the first time in Dorsey's Reply at p. 4.

Case 2:23-bk-01635-BKM    Doc 928    Filed 07/29/25    Entered 07/29/25 09:10:01    Desc
Main Document      Page 17 of 22

concluded that "[b]y making express provision for employment under § 327, payment under § 330, and priority under § 503(b)(2), the Code logically forecloses the possibility of treating § 503(b)(1)(A) as authority to pay (or give priority to) claims that do not meet its substantive requirements," the court nonetheless approved the fees under § 503(b)(1)(A), concluding the equities justified payment. *Id.* at 636-637. The district court affirmed the award, but *Milwaukee Engraving* reversed. In reaching its decision, the Seventh Circuit noted that "'[b]ankruptcy courts are not authorized in the name of equity to make wholesale substitution of underlying law ... but are limited to what the Bankruptcy Code itself provides.'" *Id.* at 637 (quoting *Raleigh v. Illinois Department of Revenue*, 530 U.S. 15, 24-25 (2000)). It also observed that "[s]tatutes directly addressing a subject prevail over silences and implications of other provisions." *Id.* at 636. The Seventh Circuit ultimately concluded that:

> it would vitiate the limitations of § 327 if a bankruptcy court could deny an application under that section and order the estate to pay for the legal services anyway. Moreover, the structure of § 503(b) strongly implies that professionals eligible for compensation must receive it under § 503(b)(2)—which depends on authorization under § 330 or § 1103(a) (and thus on approval under § 327). One might as well erase § 503(b)(2) from the statute if attorneys may stake their claims under § 503(b)(1)(A) even when ineligible under §§ 327, 330, and 503(b)(2).

*Id.*

    *Milwaukee Engraving* is not alone in this observation. The facts of *Weibel*, are similar to those of *Milwaukee Engraving*. In *Weibel,* the bankruptcy court found that counsel was not disinterested and denied its application to be retained as counsel under § 327. Thereafter, counsel applied for approval of its fees and costs for the period up to the court's ruling. The bankruptcy court denied the fees, initially finding it had no discretion because counsel was never appointed under § 327, but later on reconsideration concluded it did have discretion, but that exercising its

Case 2:23-bk-01635-BKM    Doc 928    Filed 07/29/25    Entered 07/29/25 09:10:01    Desc
Main Document        Page 18 of 22

1   discretion was not warranted. 176 B.R. at 211.[42]

2   On appeal, counsel argued that it was entitled to compensation under §§ 327 and 330, based

3   on quantum meruit, and based on benefit to the estate under § 503(b)(1).[43] Addressing the last

4   argument, the panel disagreed, writing:

5       If compensation cannot be awarded under Section 503(b)(2), then the
        question is whether it can be awarded under Section 503(b)(1). McCutchen argues
6       that it can. However, such an interpretation of Section 503 renders Section
        503(b)(2), as well as Section 327, "nugatory." *See F/S Airlease II, Inc. v. Simon,*
7       844 F.2d 99, 109 (3rd Cir. 1988). Indeed, the language behind both Sections is
        remarkably similar. Section 503(b)(2) essentially incorporates the language of
8       Section 330, that reasonable compensation can be allowed for "actual, necessary
        services rendered by" the attorney based on the nature, extent and value of such
9       services. Section 503(b)(1) provides for payment, as administrative claims, of "the
        actual, necessary costs and expenses of preserving the estate, including wages,
10      salaries, or commissions for services rendered after the commencement of the
        case."
11          For an attorney, the test for receiving compensation would appear nearly
        identical under both Sections. It is reasonable then, to construe Section 503(b)(2),
12      with its specific reference to compensation to professionals under Section 330, as
        the only part of Section 503(b) under which such professionals can receive
13      compensation.

14  *Id.* at 213. *See, also, S*urrey *Inv. Services, Inc. v. Smith*, 418 B.R. 140, 148–49 (M.D.N.C. 2009)

15  ("to apply section 503(b)(1)(A) to professional compensation would render section 503(b)(2)

16  superfluous and avoid the requirements and purposes of section 327"); *In re First Magnus*

17  *Financial Corp.*, No. BAP.AZ-08-1160-PADMO, 2009 WL 7809001, at *6 (B.A.P. 9th Cir. Feb.

18

---

19  [42] Interestingly, for its conclusion that it had discretion, the bankruptcy court relied on *Matter of Grabill Corp.*, 983

20  F.2d 773 (7th Cir. 1993), the same case that the lower court in *Milwaukee Engraving* relied on and that the Seventh
    Circuit criticized as containing only dicta on the issue of compensation without the benefit of any legal analysis from
    the litigants. *Milwaukee Engraving* at 637-638.

21  [43] The § 327 argument was made under the prior version of the Code section, which is discussed by the Supreme Court
    in *Lamie* and not at issue here. The quantum meruit theory was rejected by the panel in that it had previously held that

22  "the Bankruptcy Code and Federal Rules of Bankruptcy Procedure operate to preclude fee awards for services
    performed on behalf of a bankruptcy estate based upon state law theories not provided for by the Code." *Weibel*, 176
    B.R. at 211.

23

1   24, 2009) (quoting from *Weibel*, 176 B.R. at 213: "The Panel has held that, because § 503(b)(2)

2   specifically provides for allowance of administrative expenses consisting of 'compensation and

3   reimbursement awarded under section 330(a)[,]' '[i]t is reasonable then, to construe Section

4   503(b)(2) ... as the only part of Section 503(b) under which such professionals can receive

5   compensation.'"); and *In re Blurton*, 334 B.R. 602, 606–07 (Bankr. W.D. Tenn. 2005) ("Nowhere

6   in [*Lamie*] did the Supreme Court mention the possibility of payment of attorneys fees under §

7   503(b)(1). Surely if that were an available avenue, the Court would have addressed it in its

8   discussion of the issue.")

9       Hence, while the equities here may favor Dorsey more than in the cited cases, the Court is

10  persuaded that allowing the fees under § 503(b)(1) would improperly circumvent more specific

11  provisions of the Code that do not allow for such fees.[44] Accordingly, the fees will not be allowed

12  under this theory.

13  **V.    CONCLUSION**

14      Because this Court agrees with the analysis in *NIR West Coast* and is not persuaded by the

15  other theories advanced by Dorsey, the Application is denied. As it is denying the Application in

16  its entirety, the Court need not address the parties' arguments reading the timeliness of the

17  Application or the detailed objections to specific time entries.[45]

---

[44] Any suggestion that Dorsey was representing the equity holders entitling it to fees under § 503(b)(3)(D) and (b)(4) – and it is not clear that either party is actually arguing this – is factually incorrect as Dorsey specifically appeared on behalf of the Debtor and, of course, only the Debtor had the right to pursue a plan. Further, Dorsey seems to argue in its Reply that because the Subchapter V Trustee with expanded powers requested its assistance and its work benefitted the estate, its fees should be approved under § 503(b). However, such work does not fit neatly under any provision of § 503(b). Moreover, the Subchapter V Trustee certainly knew how to seek approval of Dorsey as special counsel for the estate – but did so only with respect to the Adversary. And as WCS points out, the Court's order approving such appointment specifically limited the start date of such appointment to the date of the application, which was not filed until August 22, 2024. Dkt. No. 646.

[45] WCS's Motion to Strike Declarations of Katie McNally, Melissa Scott, and James E. Cross (Dkt. No. 889) that sought to strike the declaration of the Subchapter V Trustee to the extent it supported the Application is also deemed moot.

Based on the foregoing,

**IT IS HEREBY ORDERED** denying the Application.

**DATED AND SIGNED ABOVE.**

Copy of the foregoing emailed
this 29th day of July, 2025 to:

Isaac M. Gabriel
Alissa Brice Castaneda
Michael Galen
DORSEY & WHITE LLP
2398 E. Camelback Rd., Ste. 760
Phoenix, AZ 85016
Email: gabriel.isaac@dorsey.com,
Email: Castaneda.alissa@dorsey.com,
Email: galen.michael@dorsey.com
Attorneys for Debtor

Benjamin W. Reeves
James G. Florentine
SNELL & WILMER, L.L.P.
One E. Washington St., Ste. 2700
Phoenix, AZ 85004
Email: breeves@swlaw.com,
Email: jflorentine@swlaw.com
Attorneys for Wound Care Specialists, LLC and RENU LLC
David Weitman
Christopher A. Brown
K&L GATES LLP
1717 Main Street, Ste. 2800
Dallas, TX 75201
Email: david.weitman@klgates.com,
Email: chris.brown@klgates.com
Attorneys for Wound Care Specialists, LLC and RENU LLC

1   Michael W. Carmel
    MICHAEL W. CARMEL, LTD.
2   80 E. Columbus, Avenue
    Phoenix, AZ 85012
3   Email: michael@mcarmellaw.com
    Attorney for Subchapter V Trustee
4
    James E. Cross
5   CROSS LAW FIRM, PLC
    PO BOX 45469
6   Phoenix, AZ 85064
    Email: jcross@crosslawaz.com
7   Subchapter V Trustee
8   Patty Chan
    OFFICE OF THE U.S. TRUSTEE
9   230 North First Avenue, Suite 204
    Phoenix, AZ 85003
10  Email: patty.chan@usdoj.gov
    Attorney for U.S. Trustee
11
12  By:/s/Annette J. Franchello
            Judicial Assistant
13
14
15
16
17
18
19
20
21
22
23

22